**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Luz Matson, ) | CIV. 12-8206-PCT-PGR |
| )   Plaintiffs, ) | |
| ) | **ORDER** |
| v. ) | |
| ) | |
| Safeway, Inc., ) | |
| ) | |
|   Defendant. ) | |
| _____) | |

Defendant has filed a Motion for Summary Judgment. (Doc. 27.). The matter is fully briefed. (Docs. 31, 33.) The Court has determined that oral argument would not materially assist its ruling. For the reasons set forth below, the motion will be granted.

**I.   BACKGROUND**

Plaintiff was employed at the Williams, Arizona, Safeway store. On August 6, 2011, after she had finished her shift and was leaving work, she observed a shoplifter outside of the store. Plaintiff approached the individual and asked him to return to the store. Inside the store, the shoplifter pushed Plaintiff and attempted to flee. A chase ensued. Plaintiff and several other Safeway employees eventually apprehended the shoplifter, tackling him to the ground. Plaintiff was injured during the incident, suffering torn ligaments in her thumb.

Safeway suspended Plaintiff, investigated the incident, and concluded that five employees, including Plaintiff, violated its shoplifting policy, which generally forbids employees from pursuing shoplifters. On August 7, 2011, Plaintiff filed a workers' compensation claim.

Safeway offered Plaintiff and the three other union members who violated the policy a chance to keep their jobs if they signed a Last Chance Agreement ("LCA"). Plaintiff

rejected the LCA. Consequently, Safeway terminated her employment. The three other union members signed the LCA and returned to their jobs with the same salaries and benefits. After negotiations with Plaintiff's union, Safeway extended her time to sign the LCA until December 2, 2011. However, Plaintiff again rejected the LCA and her employment was terminated.

On August 29, 2012, Plaintiff filed a complaint in the Coconino County Superior Court, alleging wrongful termination in violation of A.R.S. § 23-1501(3)(c)(ii) and (iii), and intentional infliction of emotional distress. (Doc. 1, Ex. A.) Plaintiff alleges that she was wrongfully terminated in retaliation for seeking workers' compensation benefits. Defendants removed the case on October 4. (Doc. 1.) They filed the pending motion for summary judgment on September 17, 2013.

## II. SUMMARY JUDGMENT

Summary judgment is appropriate when the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the initial burden of establishing the absence of any genuine issue of material fact; it must present the basis for its summary judgment motion and identify those portions of the record that it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

A material fact is one that might affect the outcome of the case under governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). To preclude summary judgment, a dispute about a material fact must also be "genuine," such that a reasonable jury could find in favor of the non-moving party. *Id.* In determining whether the moving party has met its burden, the court views the evidence in the light most favorable to, and draws all reasonable inferences in favor of, the nonmovant. *See Allen v. City of Los Angeles*, 66 F.3d 1052, 1056 (9th Cir. 1995); *Gibson v. County of Washoe*, 290 F.3d 1175, 1180 (9th Cir. 2002).

If the moving party meets its burden with a properly supported motion for summary judgment, then the burden shifts to the non-moving party to present specific facts that show

there is a genuine issue for trial. Fed. R. Civ .P. 56(e); *see Matsushia Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986). The nonmovant may not rest on bare allegations or denials in his pleading, but must set forth specific facts, by affidavit or as otherwise provided by Rule 56, demonstrating a genuine issue for trial. *Id.*; *see Anderson*, 447 U.S. at 248–49. Conclusory allegations, unsupported by factual material, are insufficient to defeat a motion for summary judgment. *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). The mere existence of a scintilla of evidence supporting the nonmovant's petition is insufficient; there must be evidence from which a trier of fact could reasonably find for the non-movant. *See Matsushita*, 475 U.S. at 586.

## III. DISCUSSION

### A. Wrongful Termination

Plaintiff alleges that Safeway violated Arizona's Employment Protection Act ("AEPA"), A.R.S. § 23-1501(3)(c)(iii), by terminating her employment in retaliation for seeking workers' compensation benefits. To succeed on this claim, Plaintiff must show that: (1) she engaged in a protected activity, (2) she suffered an adverse employment action, and (3) there is a causal link between the two. *See Hernandez v. Spacelabs Medical Inc.*, 343 F.3d 1107, 1113 (9th Cir. 2003); *Levine v. TERROS, Inc.*, No. CV-08-1458-PHX-MHM, 2010 WL 864498, at *8 (D.Ariz. March 9, 2010). If Plaintiff provides sufficient evidence to make out a *prima facie* case of retaliation, then the burden shifts to Safeway to articulate some legitimate, non-retaliatory reasons for its actions. *Porter v. California Dept. of Corrections*, 419 F.3d 885, 894 (9th Cir. 2005). If Safeway sets forth such a reason, then Plaintiff bears the burden of providing evidence that the reason is merely a pretext for the underlying retaliatory motive. *Id.*

As Safeway acknowledges, Plaintiff's complaint satisfies the first and second elements of a wrongful termination claim, by alleging that she engaged in protected activity by filing a workers' compensation claim against Safeway and suffered an adverse employment action when she was terminated. Safeway argues, however, that it is entitled to summary judgment on Plaintiff's wrongful termination claim because she has failed to produce any evidence connecting her protected activity to her termination. The Court agrees.

To establish causation, Plaintiff must show that "engaging in the protected activity was one of the reasons for her firing and that but for such activity she would not have been fired." *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1065 (9th Cir. 2002) (citations omitted); *see Knox v. United Rentals Highway Technologies, Inc.*, No. CV-07-297-PHX-DKD, 2009 WL 806625 at *5 (D.Ariz. March 26, 2009) (explaining that plaintiff must show employer had a "retaliatory motive [that] played a part in the employment action") (citing *Cohen v. Fred Meyer, Inc.*, 686 F.2d 793, 798 (9th Cir. 1982)).

Safeway asserts that it fired Plaintiff because, unlike the other employees involved in the incident, she refused to sign the LCA. In making this assertion, Safeway has articulated a legitimate, non-retaliatory reasons for its actions. The record is clear that Safeway had a policy under which only trained employees were permitted to detain suspected shoplifters (*see* Doc. 28, ¶¶ 36–39) and that Plaintiff violated that policy by confronting and chasing the suspected shoplifter.

Safeway's shoplifting policy advises employees:

> If you become aware that someone may be leaving the store with merchandise and not paying for it, report the incident to management immediately. Only employees who have been specifically designated and trained may detain any person suspected of shoplifting. Under no circumstances may any employee pursue or otherwise chase in an attempt to detain the suspected shoplifter within the store or outside the premises.

(Doc. 28, Ex. F at 20.) The policy further states that Safeway "will not tolerate any violation of this policy and any employee who decides to pursue or otherwise chase in an attempt to detain a shoplifter will be discharged irrespective of whether anyone got hurt or the company's property was recovered." (*Id.*) Plaintiff was made aware of the policy through her training and orientation, and received a copy of an Employee Handbook containing the shoplifting policy. (*Id.*, ¶¶ 15–32.)

Pursuant to its shoplifting policy, Safeway suspended all of the employees involved in the August 6, 2011, incident. The other employees signed the LCA and returned to work. Plaintiff refused to sign the LCA and was fired.

Plaintiff contends that this asserted reason was a pretext, and that she was fired in retaliation for filing a workers' compensation claim. She asserts that the only basis for

distinguishing her treatment from that of the other employees involved in the incident was the fact that she filed for workers' compensation, a claim she did not wish to forego by signing the LCA. She also insists that Safeway's shoplifting policy has been inconsistently applied, and that other employees have been treated with more lenience after violating the shoplifting policy. The Court is not persuaded.

Safeway has presented evidence that in similar incidents, in which violations of the shoplifting policy were investigated and reported to the relevant authority—here, Stuart Marcus, Director of Labor Relations for Safeway's Phoenix Division—all of the individuals involved were either terminated or offered LCAs in lieu of termination. (Doc. 28, Ex. J, ¶¶ 22, 24.) Marcus states in his declaration that "[o]n the rare occasion when a Union member has rejected a LCA, as Plaintiff did here, he or she has been terminated in every case without exception." (*Id.*, ¶ 23.) Plaintiff does not offer evidence that Safeway, as opposed to individual stores, inconsistently disciplined similarly-situated employees who violated the company's shoplifting policy.

Finally, as Safeway points out, on three past occasions Plaintiff filed workers' compensation claims without suffering any negative repercussions. (Doc. 28, ¶¶ 160–64.) This background undermines Plaintiff's suggestion that Safeway was motivated to terminate her employment by the fact that she sought workers' compensation after the shoplifting incident.

Based on these circumstances, Plaintiff has failed to demonstrate a causal link between her filing for workers' compensation benefits and her ultimate termination, and has failed to sustain her burden of showing that Safeway's proffered nonretaliatory reason for her termination was pretextual. *See Snead v. Metropolitan Prop. & Cas. Ins. Co.*, 237 F.3d 1080, 1094 (9th Cir. 2001) (employer entitled to summary judgment where plaintiff failed to raise a genuine issue of material fact regarding the truth of employer's proffered legitimate reason for termination).

### B.     Intentional Infliction of Emotional Distress

Plaintiff asserts a claim of intentional infliction of emotional distress claim against Safeway, alleging that its actions constituted extreme and outrageous conduct. To prevail on

a claim of intentional infliction of emotional distress under Arizona law, a plaintiff must prove three elements: (1) that the defendant's conduct was "extreme" and "outrageous"; (2) that the defendant either intended to cause emotional distress or recklessly disregarded the near certainty that such distress would result from his conduct; and (3) that severe emotional distress in fact occurred as a result of the defendant's conduct. *Citizen Publ'g Co. v. Miller*, 210 Ariz. 513, 516, 115 P.3d 107, 110 (2005); *see Johnson v. McDonald*, 197 Ariz. 155, 160, 3 P.3d 1075, 1080 (App. 1999).

With respect to the first element, a plaintiff must show that the defendant's conduct was "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community." *Johnson*, 197 Ariz. at 160, 3 P.3d at 1080. The "conduct necessary to sustain an intentional infliction claim falls at the very extreme edge of the spectrum of possible conduct." *Watts v. Golden Age Nursing Home*, 127 Ariz. 255, 258, 619 P.2d 1032, 1035 (1980). "A plaintiff must show that the defendant's acts were so outrageous in character and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community." *Mintz v. Bell Atlantic Sys. Leasing Int'l, Inc.*, 183 Ariz. 550, 554, 905 P.2d 559, 563 (App. 1995). Under this standard, even a defendant's "unjustifiable" conduct does not necessarily rise to the level of "atrocious" and "beyond all possible bounds of decency" that would cause an average member of the community to believe it was "outrageous." *Nelson v. Phoenix Resort Corp.*, 181 Ariz. 188, 199, 888 P.2d 1375, 1386 (App. 1994). The court determines whether the acts at issue are sufficiently outrageous to state a claim for relief. *Johnson*, 197 Ariz. at 160, 3 P.3d at 1080.

The Court finds that Plaintiff has failed as a matter of law to establish such a claim here. Arizona courts have noted that in the employment context "it is extremely rare to find conduct . . . that will rise to the level of outrageousness necessary to provide a basis for recovery for the tort of intentional infliction of emotional distress." *Mintz*, 183 Ariz. at 554, 905 P.2d at 563 (quoting *Cox v. Keystone Carbon Co.*, 861 F.2d 390, 395 (3d Cir.1988)). Termination decisions and circumstances surrounding an employer's method of discharging

1 an employee, whether wrongful or not, generally do not rise to a level of conduct extreme
2 enough to establish an intentional infliction of emotional distress claim. *Id.*; *Nelson*, 181
3 Ariz. at 200, 888 P.2d at 1387. A review of *Mintz* and *Nelson* demonstrates that Plaintiff's
4 allegations fall far short of stating a claim for intentional infliction of emotional distress.

In *Mintz*, the court granted the employer's motion to dismiss an intentional infliction of emotional distress claim where the plaintiff alleged that the defendant had twice failed to promote her, discriminating against her on the basis of sex. 183 Ariz. at 552–54, 905 P.2d at 561–63. The lost promotions caused the plaintiff to suffer severe emotional problems and she took disability leave. *Id.* Her employer then forced her to return to work several weeks earlier than her doctor recommended. *Id.* The plaintiff worked for one day but the stress of her workplace caused her to be hospitalized. *Id.* Her employer then hand-delivered a letter of termination to her while she was hospitalized. *Id.* Nevertheless, the court concluded that the employer's conduct, while "callous and insensitive," was not sufficiently extreme and outrageous to state a claim against her employer for intentional infliction of emotional distress. *Id.* at 555, 905 P.2d at 564.

In *Nelson*, the plaintiff learned of his termination when his employer called him at 2:00 a.m. 181 Ariz. at 192, 888 P.2d at 1379. At his office the plaintiff was met by armed security guards who escorted him to the lobby, where he fired in front of news media that had been invited to watch the termination. *Id.* The court held that this conduct was not extreme and outrageous enough to support an intentional infliction of emotional distress claim. *Id.* at 200, 888 P.2d at 1387.

Falling far short of the callous conduct displayed in these case, Safeway's actions in terminating Plaintiff's employment for violating of its shoplifting policy, after twice offering her the opportunity to keep her job by signing the LCA, was not sufficiently extreme and outrageous to state a claim for intentional infliction of emotional distress.

## IV.  CONCLUSION

Having viewed the evidence in the light most favorable to Plaintiff and drawn all reasonable inferences in her favor, the Court concludes that Safeway is entitled to summary judgment. Plaintiff's wrongful termination claim is unsupported by any evidence linking her

- 7 -

termination to retaliation for her workers' compensation claim, and she has not shown that Safeway's proffered reason for her termination was a pretext for retaliation. Safeway is entitled to summary judgment on Plaintiff's intentional infliction of emotional distress claim because she has not demonstrated that Safeway engaged in any extreme and outrageous conduct.

Accordingly,

IT IS HEREBY ORDERED granting Defendant Safeway's Motion for Summary Judgment (Doc. 27). The Clerk of the Court shall enter judgment in favor of Defendant.

DATED this 17th day of December, 2013.

Paul G. Rosenblatt
United States District Judge